Centaur Co. *v.* Link.

## ATLANTIC CITY

*v.*

## YOUNG & McSHEA AMUSEMENT COMPANY.

## THE CENTAUR COMPANY

*v.*

## C. W. LINK et al.

### [Filed July 15th, 1901.]

1. A defendant will be enjoined from using a label on bottles of a proprietary medicine put upon the market by it (though the patent has expired), which is so similar to another label on bottles of the same medicine longer on the market as to deceive purchasers.

2. The label must indicate plainly that the thing which it designates is manufactured by someone other than the original manufacturer.

This bill is filed to enjoin the defendant from manufacturing "Castoria" and selling it wrapped in bottles labeled so similar to those of the complainant's as to injure the complainant and deceive the public.

*Mr. John W. Wescott,* and *Mr. Edmund Wetmore* (of the New York bar), for the complainant.

*Mr. Rudolph Rabe,* for Charles W. Link et al.

*Mr. Walter H. Bacon,* for the Cumberland Glass Manufacturing Company.

REED, V. C.

For thirty-five years the complainant has manufactured a remedy known as "Castoria." It has spent more than one hundred thousand dollars a year in advertising the remedy under the name of "Castoria." Castoria was made, or purported to be made, from a formula of Dr. Pitcher and was known as "Pitcher's Castoria." Dr. Pitcher had patened the formula for its composition. The patent has expired.

The complainant owned the patent and manufactured Castoria under its protection. Since the expiration of the patent, the defendant the C. W. Link Drug Company has put upon the market a remedy under the name of "Castoria," in wrapped bottles in appearance and size bearing a resemblance to the wrapped bottles used by the complainant before and since the expiration of the patent.

It is to enjoin this conduct of the Link company that this bill is filed.

It was ruled in the case of *Singer Manufacturing Co.* v. *June Manufacturing Co., 163 U. S. 169,* that when the monopoly upon a patented device expired, and its use became public property, then the use of any name which had been employed to designate the device also became public property. The reasons for the adoption of this rule are stated in the opinion in that case and need not here be restated. It is sufficient to say that this doctrine is entirely established.

After an exhaustive examination of the authorities, Mr. Justice White, in the *Singer Case,* states the English, French and American doctrine in the following language: "Where, during the life of a monopoly created by a patent, a name, whether it be arbitrary or be that of the inventor, has become, by his consent, either express or tacit, the identifying and generic name of the thing patented, this name passes to the public with the cessation of the monopoly which the patent created."

It was therefore held that the word "Singer," under which name the Singer company had manufactured and designated the sewing machine manufactured by them under the protection of several patents, upon the expiration of the patents, became public property. Following this case it was held, in the case of *Centaur*

*Co.* v. *Heinsfurter, 84 Fed. Rep. 955,* that, after the expiration
of the patent granted to Dr. Pitcher, the right to manufacture
and sell his medicine under the name of "Castoria" became
public.

The right of anyone, other than the owner and manufacturer
under the patent, to use the name of "Castoria" is not, however,
unfettered.

It must be used so as to indicate that the thing which it desig-
nates is manufactured by someone other than the original manu-
facturer.

Mr. Justice White states this restriction in his opinion in the
*Singer Case.*

He says: "Where another avails himself of this dedication to
make the machine and use the generic dedication, he can do so
in all forms, with the fullest liberty, by affixing such name to
the machines, by referring to it in advertisements, and by other
means, subject, however, to the condition that the name must
be so used as not to deprive others of their rights or to deceive
the public, and therefore that the name must be accompanied
with such indications that the thing manufactured is the work
of the one making it as will unmistakably inform the public of
that fact."

The question is, whether the defendant, in selling its goods
under the name of "Castoria," has conformed to the condition
mentioned.

After the expiration of the patents taken out by Dr. Pitcher,
a swarm of manufacturers put upon the market goods under the
name of "Castoria." The lavish advertisements of the remedy
under that name, coupled, possibly, with its remedial merits,
opened an extensive market for its sale. For years it had been
bought simply as "Castoria." It was made by one firm, and that
name upon the bottle was a guaranty to purchasers that they
were getting a well-known remedy made by this one firm, namely,
the Centaur Manufacturing Company.

A purchaser, seeing the name of "Castoria" printed in letters
of the same size and color, upon a bottle of the same size and
form, with a similar wrapper, would not critically examine nor
be impressed with a slight difference in other respects.

The compound of the Link drug company is put up in two-ounce paneled bottles, so nearly similar in size and appearance with those of complainant's as to present no substantial difference. The word "Castoria" is printed in similar and conspicuous type, the only difference being in the first and last letters—a difference not calculated to attract attention—and in the fact that the name upon complainant's bottle is slightly curved, and in the defendant's bottle straight—this also being a difference which would not arouse the attention of an unsuspecting purchaser. Upon both is the formula of Dr. Pitcher. Over the complainant's formula are the words "Receipt of old Dr. Pitcher," in small type, and over the formula of the Link drug company bottles "Formula of old Dr. Pitcher," in large letters. The remainder of the printed matter differs in form and somewhat in substance, and upon defendant's label is the picture of a beehive, with the word "trade" upon one side of it and "mark" upon the other. On the bottom of the complainant's label is the name of "Charles H. Fletcher," in small letters. Upon the label of the Link company, in large letters, are the words "C. W. Link Drug Co." The label of the complainant is made of slightly-tinted white paper, and that of the Link drug company of white paper; but, unless placed together, the difference in color is not perceptible.

There are several reported cases in which this complainant has secured an injunction against manufacturers of a remedy put upon the market under the name of "Castoria."

In *Centaur Co.* v. *Neathery, 91 Fed. Rep. 891,* the defendant used bottles and labels which only differed from those of the complainant in the name of the manufacturer. The circuit court of appeals for the Fifth district reversed the order of the circuit court refusing an injunction, and remanded the case, with instruction to grant a preliminary injunction restraining the defendant from selling any preparation in or under any package or label containing any word or combination of words calculated to create confusion in the mind of the public with the labels and designs used by the complainant.

A similar result was reached by the same court in the case of *Centaur Co.* v. *Hughes Brothers Manufacturing Co., 91 Fed. Rep.*

*901,* in which case the labels employed by the defendant and complainant differed more than in the preceding case, but were generally similar.

In *Centaur Co. v. Killenberger, 87 Fed. Rep. 725,* Judge Kirkpatrick, of the New Jersey district court, enjoined a defendant from using a label because it had a tendency to deceive, and was designed to deceive. In delivering judgment, the court remarked: "While it is true that, upon actual comparison of the wrappers side by side, substantial differences will be found, and that no one with knowledge would, after such examination, be deceived, still it will be perceived at once, upon a mere inspection of the packages, that they are so much alike in general comparison that the one is apt to be mistaken for the other, and that a close inspection is necessary to distinguish them." This conclusion of Judge Kirkpatrick was approved in the case of *Centaur Co. v. Neathery, supra.*

An injunction was also decreed by Judge Baker, sitting in the circuit court for the district of Indiana, in the case of *Centaur Manufacturing Co. v. Robinson, 91 Fed. Rep. 889.*

In speaking of the duty of a manufacturer who puts upon the market a well-known remedy, the court remarked: "Where an article that costs but a few cents is offered upon the market, it is a matter of common knowledge that an intended purchaser pays little or no attention to it. He sees the name "Castoria," and whether it is the Castoria of the complainant or that of the defendant is a question which does not, by reason of the small value of the purchase, engage his attention. Unless there is some such marked dissimilarity as that, being acquainted with the complainant's form of putting up its Castoria, it would at once arouse his suspicion, the intended purchaser would be readily deceived into making a purchase of an article that he really did not intend to buy."

In the present case, notwithstanding the difference in the printed matter on the labels, I am unable to resist the conclusion that the size and shape of the bottles and the color and form of the label were selected by the defendant for the purpose of leading some purchasers to take its compound under the

supposition that they were getting what they had always got, namely, the medicine made by the complainant.

A purchaser whose attention had been called to the fact that there was a number of preparations being sold under the name of "Castoria," and that "Fletcher" was the old one, would probably not be deceived by the general appearance of the Link company's bottle and wrapper. A purchaser, however, who was not aware of the fact that preparations of other manufacturers were upon the market, under the same name, the general appearance of the bottle and wrapper was undoubtedly calculated to mislead to the belief that he was getting the old Castoria.

I am convinced that few persons, however long they may have used a proprietary medicine, have examined the bottles so carefully as to be able to recall much of the printed matters upon them. Their familiarity with the bottles and wrappers is limited to their size and general appearance, and, possibly, to the words most strikingly displayed.

The use of bottles of the same size and shape and of labels of the same form and color, and of the word "Castoria" printed in letters substantially the same in size and shape, was calculated to mislead a purchaser into the belief that he was getting the Castoria which had, year after year, been in the market in similar packages. Every one of the numerous packages of other manufacturers, put in evidence by the defendant, show a persistent adoption of the size of the bottle and the label of the complainant. All these manufacturers knew, just as the defendant knew, that if the remedy was put up in round bottles, or in bottles distinctively larger or smaller, or if the bottles were so differently wrapped as to at once arrest the attention of the casual purchaser, the sale of the remedy in such packages would at once become substantially reduced. The differences introduced by the defendant were such as it was thought would be sufficient to evade an injunction, while not sufficient to arrest the attention of the majority of the purchasers.

In my judgment it was the duty of the defendant to make it clear to the purchaser that the remedy manufactured by it was not the remedy manufactured by the complainant under the

name of "Castoria." This it did not do. There should be an injunction against it.

In addition to the injunction asked for against the manufacturer and vendors there is also asked a writ against the Cumberland Glass Manufacturing Company for making the bottles for the vendors of the remedy.

I do not think, under the evidence, an injunction should go against this company.